Nima Darouian (SBN 271367)
darouiann@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Attorneys for Defendant
CSL PLASMA INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIRA FAKIRA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CSL PLASMA INC.; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453** |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant CSL PLASMA INC. ("CSL Plasma" or "Defendant") hereby invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California for the County of Alameda.

**SERVICE AND PLEADINGS FILED IN STATE COURT**

1. On December 18, 2023, Plaintiff Amira Fakira filed a putative class action complaint ("Complaint") against Defendant in the Superior Court of the State of California for the County of Alameda, entitled *Amira Fakira, individually and on behalf of others similarly situated, vs. CSL Plasma Inc.; and Does 1 through 25, inclusive,* Case No. 23CV057131, alleging nine

causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Breaks; (4) Failure to Provide Rest Breaks; (5) Failure to Timely Pay Wages During Employment; (6) Failure to Provide Accurate Wage Statements; (7) Failure to Timely Pay Final Wages Upon Termination; (8) Failure to Reimburse Necessary Business Expenses; and (9) Unfair and Unlawful Business Practices In Violation of Business and Professions Code § 17200, *et seq*.

2. Plaintiff served Defendant with the Summons and Complaint on January 10, 2024. A true and correct copy of the Proof of Service, Summons, Complaint, and other related court documents are attached as **Exhibit A** to the Declaration of Nima Darouian ("Darouian Decl.") filed concurrently with this Notice of Removal. Darouian Decl. ¶ 2.

3. On January 17, 2024, the Alameda County Superior Court issued an Order re: Complex Determination Hearing, which is attached as **Exhibit B.** Darouian Decl. ¶ 3.

4. On January 17, 2024, the Alameda County Superior Court issued a Notice of Case Reassignment and Notice of Case Rescheduling or Relocation, which are attached as **Exhibit C.** Darouian Decl. ¶ 4.

5. On February 7, 2024, Defendant filed its Answer to the Complaint in the Superior Court of the State of California for the County of Alameda. A true and correct conformed copy of Defendant's Answer is attached **as Exhibit D**. Darouian Decl. ¶ 5.

6. **Exhibits A-D** constitute all the pleadings that have been filed and/or served in this action as of the date of filing this Notice of Removal based on a review of the documents available on the state court's docket. Darouian Decl. ¶ 6.

## **TIMELINESS OF REMOVAL**

7. Defendant's removal is timely because it is filed within thirty (30) days after Defendant first received a copy of Plaintiff's Summons and Complaint upon which this action is based. Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## NOTICE TO ALL PARTIES AND STATE COURT

8. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents will be promptly served on Plaintiff's counsel and filed with the Clerk of the Alameda County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT (CAFA)

9. Section 4 of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d)(2) provides, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a state different from any defendant.

10. In addition, CAFA confers federal court jurisdiction where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

11. As set forth below, this action satisfies all the requirements for federal jurisdiction under CAFA. This action (a) does not involve a defendant who is a governmental official or entity; (b) involves plaintiffs and defendants who are citizens of different states; (c) involves a putative class of 100 or more purported members; and (d) involves an amount in controversy greater than $5,000,000.

## Defendant Is Not a Governmental Official or Entity

12. Defendant is not a state, a state official, or any other governmental entity.

## Plaintiffs and Defendant Are Citizens of Different States

13. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332. CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a different state from any one defendant. *See* 28 U.S.C. § 1332(d)(2); *United States v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to "achieve its purposes, CAFA provides

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)"); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14. Diversity of citizenship is determined "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

15. A natural person's citizenship is determined by that person's state of "domicile." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (citation omitted). A person's intention to remain may be established by their place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. Jun. 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16. On removal, a defendant need only provide "a short and plain statement alleging that [the plaintiff] and the putative class members were citizens of California." *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019). The defendant does not have to "explain why it believed [plaintiff] or the putative class members were citizens of California … a defendant's allegations of citizenship may be based solely on information and belief." *Id.*

17. Here, the Complaint alleges that Plaintiff Amira Fakira "is and was an individual residing in Sacramento County in the State of California." *See* Complaint, ¶ 9. Defendant is therefore informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff, at the time this action was commenced, and still is, a resident and citizen of the State of California within the meaning of 28 U.S.C. § 1332(a).

18. A corporation is a citizen of any state in which it is incorporated and of the state in which it has its principle place of business. 28 U.S.C. § 1332(c). With respect to ascertaining a

corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state.

19. At the time Plaintiff filed the Complaint, and presently, Defendant has been a corporation organized under the laws of the State of Delaware. *See* Declaration of Elizabeth Wixted ("Wixted Decl.") at ¶ 3. At all relevant times, the company headquarters of Defendant, and thus its principal place of business, has been in the State of Florida. *Id.* Defendant's headquarters in Boca Raton, Florida is where the majority of its executive, administrative, financial, and management functions are conducted, and from where the majority of its high-level officers direct, control, coordinate and control the company's operations and activities. *Id.* Most of Defendant's executive officers maintain their offices in the State of Florida. *Id.* Accordingly, for purposes of removal under CAFA, Defendant is either a citizen of the State of Delaware or Florida, and is not a citizen of the State of California.

20. Because at least one member of the class of Plaintiffs is a citizen of a state (California) different from Defendant (Delaware or Florida), minimal diversity exists here. *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. Lexis 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

21. The presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

**The Putative Class Consists of More Than 100 Members**

22. The Complaint alleges that the putative class is so numerous that joinder of all California class members is impracticable. Complaint ¶ 28. Plaintiff Amira Fakira purports to

represent "all similarly situated individuals who worked for Defendants in the State of California as hourly-paid and non-exempt employees at any time from four years prior to the date of this Complaint through final judgment[.]". Complaint ¶ 1. There are at least 504 individuals that fall within the Plaintiff's putative class definition. Wixted Decl. at ¶ 5.

23. Based on the pleadings set forth by Plaintiff and Defendant CSL Plasma's internal employee data, the alleged putative class exceeds 100 members.

### The Purported Amount in Controversy Exceeds $5,000,000

24. CAFA authorizes the removal of class actions in which the amount in controversy exceeds $5,000,000.00 28 U.S.C. §1332(d).

25. When measuring the amount in controversy, the court must assume that the allegations of the complaint are true and that the jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 992, 1001 (C.D. Cal. 2002).

26. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S.Ct. 547 (2014), the United States Supreme Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 554 (emphasis added). Plaintiffs may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1347 (2013). Because Plaintiffs have not expressly pled a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

27. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp.*

*Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven"); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); see *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 594-96 (2013)). "The Supreme Court has held that when a class-action plaintiff stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total, the district court should ignore that stipulation when assessing the amount in controversy. This is so because although individual plaintiffs are the masters of their complaints and may stipulate to amounts at issue that fall below the federal jurisdictional requirement, the same is not true for a putative class representative, who cannot yet bind the absent class." *Arias*, 936 F.3d at 928-29 (citing *Standard Fire Insurance Co.*, 568 U.S. at 595-96 (internal quotations and citations omitted)).

28. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. See *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also*

*Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

29. Plaintiff generally defines the "Class" as follows: "All current and former hourly-paid and/or non-exempt employees who worked for Defendants in the State of California at any time during the period from four years prior to the date of the filing of this Complaint until final judgment." *See* Complaint, ¶ 24.

30. Based on a review of Defendant's payroll records, there are at least 504 persons that fit Plaintiff's class definition for the relevant class time period (December 18, 2019 to present). Wixted Decl. at ¶ 5. These putative class members worked in excess of 24,615 workweeks during the time period of December 18, 2019 to the date of removal, and were paid an average hourly rate of $28.94 per hour. *Id.* at ¶ 6. The lowest hourly rate applicable to a putative class member in this action is $16.90. *Id.* at ¶ 7.

31. Plaintiff does not allege a specific amount in damages for the class she purports to represent, but indicates that they seek damages in excess of twenty-five thousand dollars ($25,000). Thus, the amount in controversy, as pled by Plaintiff, is at least $25,000 per plaintiff, or at least $12,600,000 ($25,000 x 504 putative class members). Wixted Decl. at ¶ 5; *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006) (finding jurisdictional amount met where complaint sought no specific amount in damages, but pled the amount in controversy to exceed $25,000 and there were 1,160 class members). For this reason alone, CAFA's amount in controversy requirement is satisfied.

32. Without admitting that Plaintiff could recover or is entitled to any damages individually, let alone on a class wide basis, Defendant has a good-faith belief that Plaintiff's

sought-after relief places the amount in controversy in this action in excess of $5,000,000, exclusive of interest and costs.

### 1. Alleged Minimum Wage Violations

33. Under the first cause of action, Plaintiff alleges "Defendants' failure to pay Plaintiff and the other class members the minimum wage as required violates California Labor Code sections 1194, 1197 and 1197.1. Pursuant to those sections, Plaintiff and the other class members are entitled to recover the unpaid balance of their minimum wage compensation, as well as interest, costs, and attorney's fees." Complaint ¶ 39. Plaintiff further alleges, "Pursuant to California Labor Code section 1194.2, Plaintiff and the other class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully paid and interest thereon." Complaint ¶ 39.

34. Plaintiff's Complaint does not specify an alleged amount of unpaid minimum wages, but states "Plaintiff and the other class members were *frequently* suffered or permitted to work 'off-the-clock'" (Complaint ¶ 33) (emphasis added), and "Defendants *regularly* failed to pay at least minimum wages to Plaintiff and the other class members for all hours they worked". Complaint ¶ 37 (emphasis added). Plaintiff alleges such "off-the-clock" work included work prior to clock-in, while clocked-out for meal periods, after clock-out, and between shifts. Complaint ¶ 35. Plaintiff further alleges, "Defendants had a *policy, practice and procedure* of rounding employee time such that Plaintiff and some or all class members were systematically unpaid and/or underpaid for time worked over the course of their employment." Complaint ¶ 36 (emphasis added).

35. Courts in this circuit have regularly found that a violation rate of one hour of unpaid minimum wage per employee per workweek is a reasonable assumption where, as here, the complaint alleges a policy, pattern, or practice of failing to pay minimum wage for all hours worked. *See, e.g., Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *4 (N.D. Cal Oct. 25, 2019) (stating that an assumption of "one hour of unpaid minimum wage and unpaid overtime per week per class member" was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when

plaintiff fails to include specific allegations"); *Demaria v. Big Lots Stores - PNS, LLC*, 2023 U.S. Dist. LEXIS 176567, at *16 (E.D. Cal. Sep. 28, 2023) ("[C]ourts in this district have found an assumption of one hour of unpaid minimum wages per employee per workweek . . . to be reasonable, even if a complaint uses limiting language, when a plaintiff alleges a policy or practice on the part of defendants."); *see also Mendoza v. OSI Indus., LLC*, 2022 U.S. Dist. LEXIS 167940, at *13 (C.D. Cal. Sep. 16, 2022) (emphasis added) (finding reasonable Defendant's assumption that given the 'Complaint's limited information and the fact that the minimum wage violations are alleged to have occurred' as a 'policy and practice,' it is reasonable for Defendant to assume that Plaintiffs seek to recover at least *five* hours of minimum wage per week). Courts find it reasonable to use the lowest California minimum wage during the relevant time period for calculating the amount in controversy. *See Demaria*, 2023 U.S. Dist. LEXIS 176567, at *8, 16.

36. Assuming, conservatively, only one hour of unpaid minimum wage per workweek per putative class member within the class period (24,615 workweeks), and conservatively using the lowest California minimum wage during the relevant time period ($12 (*see* Cal Lab Code § 1182.12)), Plaintiff and putative class members seek $295,380 in unpaid minimum wages (1 hour unpaid minimum wage x 24,615 workweeks x $12 hourly minimum wage rate). Wixted Decl. at ¶ 6.

37. Thus, the amount in controversy for Plaintiff and putative class member's minimum wage claim is at least **$295,380**.

### 2. Alleged Overtime Violations

38. Under the second cause of action, Plaintiff alleges, "Defendants' failure to pay Plaintiff and the other class members . . . violates California Labor Code sections 510 and 1198 and the applicable Wage Order and is therefore unlawful." Complaint ¶ 47. Plaintiff further alleges, "Pursuant to California Labor Code section 1194, Plaintiff and the other class members are entitled to recover their unpaid overtime compensation, and interest, costs, and attorneys' fees." Complaint ¶ 48.

39. Plaintiff's Complaint does not specify an alleged amount of unpaid overtime, but states, "Plaintiff and the other class members *regularly* worked in excess of eight (8) hours in a

day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week and/or seven (7) consecutive days in a workweek. However, Defendants did not accurately record Plaintiff and the other class members' actual hours worked and *intentionally and willfully* failed to pay all overtime wages owed to plaintiff and the other class members." Complaint ¶ 46 (emphasis added). Plaintiff alleges such overtime violations included "off-the-clock work", "mischaracterized overtime", Defendants' "refus[a] to authorize overtime necessary for them to complete assigned work", and Defendants' "fail[ure] to include all required wages and remuneration when calculating and setting the overtime rate." Complaint ¶ 46.

40. Courts in this circuit have regularly found that a violation rate of one hour of unpaid overtime per employee per workweek is a reasonable assumption where, as here, the complaint alleges a policy, pattern, or practice of failing to pay overtime. *See e.g.*, *Kastler*, 2019 U.S. Dist. LEXIS 185484, at *4; *Cabrera v. S. Valley Almond Co., Ltd. Liab. Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *24 (E.D. Cal. Dec. 16, 2021) (finding removing defendants' assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,' particularly since the Complaint alleges that the Labor Code violations at issue in this case are due to 'policies and/or practices' on the part of Defendants"); *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *13-14 (N.D. Cal. Dec. 9, 2014) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week.").

41. Assuming, conservatively, only one hour of unpaid overtime per workweek per putative class member within the class period (24,615 workweeks), and using 1 ½ times the lowest applicable hourly rate for a putative class member ($16.90), the amount in controversy for Plaintiff and putative class members' overtime claims is **$623,990.25** in unpaid overtime (1 hour unpaid overtime x 24,615 workweeks x $25.35 lowest hourly overtime rate). Wixted Decl. at ¶ 6.

### 3. Alleged Meal Break Violations

42. Under the third cause of action, Plaintiff and the putative class seek damages for alleged premium pay in the form of "one additional hour of pay" for each noncompliant meal break. Complaint ¶ 60.

43. Plaintiff alleges that, "Plaintiff and the other class members who were scheduled to work for shifts no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes." Complaint ¶ 54. Further, "Plaintiff and the other class members who were scheduled to work for shifts in excess of ten (10) hours but no longer than twelve (12) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than ten (10) hours without a second uninterrupted meal period of not less than thirty (30) minutes." Complaint ¶ 55. Plaintiff additionally alleges that "because of Defendants' rounding policy, meal breaks were at times incorrectly recorded as compliant, when in reality they were untimely and/or cut short." Complaint ¶ 57. Thus, Plaintiff alleges, "Defendants failed to pay Plaintiff and the other class members all meal premiums due pursuant to California Labor Code section 226.7 and 512 and the applicable Wage Order." Complaint ¶ 58. Plaintiff alleges these violations occurred as a result of the policies and practices of Defendant. Complaint ¶¶ 12, 29, 57.

44. Courts in the Ninth Circuit have held that when a plaintiff alleges a policy, pattern, or practice of authorizing and permitting noncompliant meal and rest breaks, it is reasonable for the defendant to assume between 25% and 60% meal and rest break violation rates in assessing the amount in controversy. *See, e.g., Bulnes v. Suez WTS Servs. USA, Inc.*, No. 22-CV-01154-BAS-AHG, 2023 WL 2186431, at *4 (S.D. Cal. Feb. 23, 2023) (internal citations omitted) (finding that for meal and rest premiums, "Defendant's 40% violation rate is a plausible assumption given Plaintiff's 'pattern and practice' allegations" and noting "District courts have found violation rates of 25% to 60% to be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice allegation[s]'"); *Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 721 (N.D. Cal. 2023) (finding a twice-per-week violation rate for meal and rest breaks (*i.e.*, 40%) reasonable); *Demaria v. Big Lots Stores - PNS, LLC*, No. 223CV00296DJCCKD, 2023 WL

6390151, at *6 (E.D. Cal. Sept. 29, 2023) (finding 40% violation rate for meal and rest breaks reasonable); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (finding 50% violation rate for meal and rest breaks reasonable); *Alvarez v. Off. Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding 60% violation rate for meal and rest breaks reasonable).

45. Assuming two noncompliant meal break per workweek per putative class member (*i.e*., 40% violation rate) within the class period and using the lowest applicable hourly rate for a putative class members ($16.90), the amount in controversy for Plaintiff and putative class members' meal break claim is **$831,987** (2 meal break violation per workweek x 24,615 workweeks x $16.90 lowest hourly rate). Wixted Decl. at ¶¶ 6-7.

### 4. Alleged Rest Break Violations

46. Under the fourth cause of action, Plaintiff and the putative class seek damages for alleged premium pay in the form of "one additional hour of pay" for each workday where compliant rest breaks were not provided. Complaint ¶ 70.

47. Plaintiff alleges that, "Defendants *routinely* required Plaintiff and other class members to work three and one-half (3 ½) or more hours without authorizing or permitting a compliant ten (10) minute rest period . . . ."). Complaint ¶ 65 (emphasis added). Plaintiff also alleges, "Defendants willfully required, suffered and permitted Plaintiff and the other class members to work during what should have been their rest periods" and "failed to relieve Plaintiff and other class members of all duties" during rest periods. Complaint ¶ 66. Plaintiff further alleges "Defendants failed to pay Plaintiff and the other class members the full rest period premium due to them in violation of" California law. Complaint ¶ 69.

48. Where, as here, the complaint does not specify a violation frequency and alleges a policy, pattern, or practice of failing to provide meal and rest periods and pay attendant premiums, it is reasonable to assume a rest break violation rate of at least 40%. S*ee* Complaint ¶¶ 12, 29, 65, 66, 69; *see also, Bulnes v. Suez WTS Servs. USA, Inc.*, No. 22-CV-01154-BAS-AHG, 2023 WL 2186431, at *4 (S.D. Cal. Feb. 23, 2023); *Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 721 (N.D. Cal. 2023); *Demaria v. Big Lots Stores - PNS, LLC*, No. 223CV00296DJCCKD, 2023

WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015); *Alvarez v. Off. Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017).

49. Assuming two noncompliant rest break per workweek per putative class member (*i.e.*, 40% violation rate) within the class period, and using the lowest hourly rate applicable for a putative class members ($16.90), the amount in controversy for Plaintiff and putative class members' rest break claim is **$831,987** (2 rest break violation per workweek x 24,615 workweeks x $16.90 lowest hourly rate).  Wixted Decl. at ¶¶ 6-7.

### 5. Alleged Wage Statement Violations

50. In the sixth cause of action, Plaintiff claims "Defendants intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements" in violation of California Labor Code § 226(a). Complaint ¶ 79. Plaintiff further alleges Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000)." Complaint ¶ 82; *see also, e.g., Romeo v. Home Depot U.S.A., Inc.*, No. 06CV1505 IEG (BLM), 2006 U.S. Dist. LEXIS 79881, at *8 (S.D. Cal. Oct. 30, 2006) (holding that when plaintiffs seek the statutory maximum in their complaint, plaintiffs "cannot avoid satisfaction of the amount in controversy by alleging it would be 'far from reasonable to infer that a court or jury' would award the statutory maximum").

51. Labor Code section 226(e)(1) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [section 226] subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e)(1). Plaintiff and the putative class members' section 226 claims are subject to a one-year statute of limitations. *See* Cal. Code Civ. Proc. § 340(a). From December 18, 2022 to present, there are/were approximately 366 current and former non-exempt

employees employed by Defendant in California. Wixted Decl. at ¶ 8.

52. As set forth in Plaintiff's Complaint, Plaintiff and the putative class members are seeking the "greater" of their actual monetary damages or an aggregate penalty not exceeding $4,000 per employee (Complaint ¶ 82) and are therefore seeking the "statutory maximum." *See Romeo*, 2006 U.S. Dist. LEXIS 79881, at *8. Thus, based on Plaintiff's requested relief, an assessment of total penalties based on the statutory maximum could amount up to $1,464,000 ($4,000 x 366 employees).  Wixted Decl. at ¶ 8; *see also e.g.*, *Kastler*, 2019 U.S. Dist. LEXIS 185484, at *17 (finding 100% wage statement violation rate reasonable where plaintiffs alleged defendants "intentionally and willfully" failed to provide accurate wage statements and noting "[b]ecause the baseline assumptions of one hour of unpaid minimum wage and one hour of unpaid overtime per week are reasonable . . . Defendant's calculations for wage statement violations are also reasonable"); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) ("[Plaintiff's] complaint contains broadly-worded averments that [defendant] systematically violated § 226. . . . Based on [plaintiff's] broad allegations, [defendant] reasonably assumes that each wage statement given to each putative class member may have violated § 226."); *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that defendants "uniformly and systematically", "at all times", "intentionally, and willfully" failed to furnish plaintiff and the class members with accurate wage statements); *Lucas v. Michael Kors (USA) Inc.*, No CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (finding 100% violation rate reasonable, noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

53. Accordingly, Plaintiff's contention that she and the putative class members are "entitled to recover" the statutory maximum for Defendant's alleged failure to provide accurate wage statements puts **$1,464,000** in controversy.

**6. Alleged Untimely Final Wages**

54. Under the seventh cause of action, Plaintiff and the putative class seek waiting time penalties under California Labor Code § 203. According to section 203, an employee who is not timely paid all wages due upon termination may recover a penalty equal to the employee's daily rate of pay for each day the wages were improperly withheld, for up to 30 days. *See* Cal. Lab. Code § 203.

55. Plaintiff's Complaint alleges that "Plaintiff and other class members *regularly* worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week and/or seven (7) consecutive days in a workweek." Complaint ¶ 46 (emphasis added). Plaintiff further alleges that "at the time that Plaintiff and the other class members' employment with Defendants ended, Defendants knowingly and willfully failed to pay them all wages owed to them pursuant to California Labor Code sections 201 and 202, including, without limitation, failure to pay minimum wages or regular rate/straight time wages, failure to pay overtime wages, meal break violations, rest break violations, or any other wages, remuneration, pay, or monies due, *e.g.*, accrued gratuities, bonuses, commissions, etc., as required per California Labor Code sections 204." Complaint ¶ 86.

56. Courts in this circuit have found that a 100% violation rate for waiting time penalties can be a reasonable assumption. *See, e.g., Kastler*, 2019 U.S. Dist. LEXIS 185484, at *16 (finding defendant's use of 100% violation rate for calculating waiting time penalties reasonable, stating, "[b]ecause Plaintiff alleges that Defendant failed to pay overtime and minimum wages and meal and rest break premiums to present, using the thirty day maximum is inherently reasonable"); *Chavez*, 2019 WL 1501576, at *4 ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages."); *Marquez v. Southwire Co., LLC*, 2021 U.S. Dist. LEXIS 97011, at *6 (C.D. Cal. May 21, 2021) ("If Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations.").

57. Based on Defendant's payroll records, approximately 254 non-exempt employees within California terminated their employment with Defendant within the relevant three-year statute of limitations period (December 18, 2020 to present). Wixted Decl. at ¶ 9. The lowest applicable hourly rate for a putative class member during this three-year period is $16.90. *Id.* Accordingly, given this number of employees, Plaintiff's allegations that she and the putative class members regularly worked at least 8 hours in a workday, and applying the lowest applicable hourly rate for a putative class member, the potential exposure as to Plaintiff and putative class members' alleged waiting time penalties is at least **$1,030,224** (254 employees x $16.90 hourly rate x 8 hours x 30 days).

### 8. Attorneys' Fees

58. In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may also consider the value of claims for attorneys' fees. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding the amount in controversy may include attorneys' fees recoverable by statute). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties).

59. Moreover, Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately 25% of the projected damages. *See, e.g. Kastler*, 2019 U.S. Dist. LEXIS 185484, at *18 ("In the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate."); *Herrera v. Carmax Auto Superstores Cal.*, LLC, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014)

("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("[I]t is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

60. Given that Defendant can reasonably project the amount in controversy on just six of Plaintiff's nine causes of action to be at least **$5,077,568**, Defendant can reasonably assume that Plaintiff's attorneys will be entitled to attorneys' fees valued at **$1,268,392** ($5,077,568 x .25)

61. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merits of Plaintiff's claims, the amount in controversy on six of the nine claims in Plaintiff's Complaint alone exceeds **$6,346,960** and surpasses the jurisdictional threshold required under CAFA. *See, e.g., Behrazfar v. UNISYS Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (When a "[d]efendant's calculation were relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.").

## **VENUE IS PROPER**

62. Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a) and 1391(c) because the State action was filed in this district and Defendant is subject to personal jurisdiction in the Northern District of California.

63. WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Alameda to this Court.

DATED: February 9, 2024                     Respectfully submitted,

BALLARD SPAHR LLP
By: */s/ Nima Darouian*
Nima Darouian
Attorneys for Defendant
CSL PLASMA INC.

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is **BALLARD SPAHR LLP**, 2029 Century Park East, Suite 1400, Los Angeles, CA 90067-2915. On February 9, 2024, I served the within documents: **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**

☑ **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. and no error was reported.

☐ **BY E-MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported. Said electronic mail transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY HAND:** I caused such document(s) to be delivered by hand to the addressee(s).

| | |
|---|---|
| Barbara DuVan-Clarke, Esq.<br>Alexander K. Spellman, Esq.<br>P. J. Van Ert, Esq.<br>Annabel Blanchard, Esq.<br>Yesenia Rosas<br>Jhessica Tor<br>BLACKSTONE LAW, APC<br>8383 Wilshire Boulevard, Suite 745<br>Beverly Hills, California 90211 | *Attorneys for Plaintiff AMIRA FAKIRA*<br><br>Tel. No.  (310) 622-4278<br>Fax No.  (855) 786-6356<br>Email:    BDC@blackstonepc.com<br>          aspellman@blackstonepc.com<br>          pjvanert@blackstonepc.com<br>          ablanchard@blackstonepc.com<br>          yrosas@blackstonepc.com<br>          jtor@blackstonepc.com |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 9, 2024, at Los Angeles, California.

*Cynthia C. Touchard*
Cynthia A. Touchard